J-S60034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| P.V.M., JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.S.C.-K. | : | No. 1219 MDA 2019 |

Appeal from the Order Entered June 13, 2019
In the Court of Common Pleas of Clinton County
Civil Division at No(s):  1478-2017,
894-2006

BEFORE:  SHOGAN, J., STABILE, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                    **FILED JANUARY 21, 2020**

P.V.M., Jr. ("Father") appeals from the order entered June 13, 2019, in the Court of Common Pleas of Clinton County granting the request of J.S.C.-K. ("Mother") to relocate with the parties' fourteen-year-old son, P.M.,[1] and twelve-year-old daughter, J.M.[2] (collectively, "the children"), from Beech Creek, Pennsylvania, to Liberty, Missouri.  Upon careful review, we vacate and remand for further proceedings.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] P.M. was born in October 2004.

[2] J.M. was born in September 2006.

This appeal arises from Mother's petition for modification and relocation filed on March 28, 2019, requesting to relocate with P.M. and J.M. to the home of S.D.S., whom she planned to marry on November 9, 2019.[3] In her petition, Mother asserted, "Father's relationship with the children is poor[,]" and "the children want to relocate." Petition, 3/28/19, at Paragraphs 5-6. Father filed a counter-affidavit challenging those assertions. The trial court held a hearing on June 7, 2019.

By way of background, the record reveals an underlying protracted custody matter initiated by Mother in 2006 in the Clinton County Court of Common Pleas. Throughout the history of this case, the court awarded the parties shared legal custody and Mother primary physical custody. As best we can discern, Mother relocated to Centre County in 2013 after which the Centre County Court of Common Pleas assumed venue. By August 2017, Mother had returned to Clinton County and Centre County Court of Common Pleas transferred the case back to Clinton County. In November 2017, Father was awarded partial physical custody.

In November 2017, Clinton County Court of Common Pleas appointed a guardian *ad litem* ("GAL") to represent the best interests of P.M. and J.M.[4] The

_____

[3] Father is married to L.M. ("Stepmother") and they have two children, who were five and nearly two years old at the time of the proceeding.

[4] The record reveals that the same GAL was appointed during the custody litigation in Centre County.

custody order then in effect, dated February 16, 2017, granted Father partial custody on alternating weekends from Thursday to Sunday and one evening each week from 4:30 p.m. to 7:00 p.m. The order also set forth a holiday schedule.

By report to the court on November 14, 2017, when P.M. and J.M. were thirteen and eleven years old, the GAL stated that the children alleged "violent incidents" by Father against P.M. occurred on November 5 and 8, 2017. GAL Memorandum, 11/14/17, at 2. Prior to the GAL completing his investigation regarding "[w]hether the issues are behavioral on the part of the minor children or parental concerns of Father. . .[,]" he recommended that (1) Father's partial physical custody be temporarily suspended; and (2) the parties be referred to Robert Meacham, M.S., a licensed psychologist, for a psychological evaluation of the children and Father. GAL Memorandum, 11/14/17, at 3. By *interim* orders dated November 15 and 22, 2017, the trial court, among other things, (1) suspended Father's partial physical custody; (2) directed Clinton County Children and Youth Social Services Agency ("CYS") to investigate the matter;[5] and (3) referred the parties to Mr. Meacham, a psychologist.[6]

_____

[5] The record does not include any evidence related to the CYS investigation.

[6] Mr. Meacham described the incidents in November 2017 as "two verbal and/or physical altercations between [F]ather and [P.M.] provoked by [P.M.] being verbally oppositional." Psychological Evaluation, 5/28/19, at 2-3.

Mr. Meacham filed reports with the trial court, the parties' counsel and the GAL on April 18, 2018, May 8, 2018, June 7, 2018, August 21, 2018, October 3, 2018, December 13, 2018, January 23, 2019, and March 26, 2019. The memoranda provided recommendations regarding reunification and a partial custody schedule for Father, and the court issued *interim* orders implementing each of the recommendations.[7]

In April 2018, Mr. Meacham explained that only J.M. wished to reconcile with Father, and their reconciliation subsequently progressed with Mr. Meacham's involvement. In October 2018, Mr. Meacham stated that P.M. wanted to reconcile with Father. Mr. Meacham recommended that Father be granted custody of the children on alternating weekends for two to four hours, for a total of four weekends. In December 2018, Mr. Meacham stated that the children wished to visit with Father from 12:00 p.m. to 8:00 p.m. on Christmas Eve and on alternating weekends in January 2019 from 12:00 p.m. to 8:00 p.m.

On January 23, 2019, Mr. Meacham stated, "visits with [F]ather have been going very well. It is clear from their interactions in my presence here today

_____

[7] In addition to implementing Mr. Meacham's recommendations, the *interim* orders directed that if either party disagreed with the recommendations, then the party shall file a petition for a prompt hearing. Mother filed a petition for a prompt hearing pursuant to the order dated August 28, 2018, which implemented the August 21, 2018 recommendations. By agreement of the parties, the court vacated the August 28, 2018 order and directed the parties to meet with Mr. Meacham on October 3, 2018, for ongoing reunification services. The parties did not file a petition with respect to any of the other *interim* orders.

that the children are enjoying their expanded [time] with [F]ather." Memo, 1/23/19, at 1. Further, Mr. Meacham stated that the children "would like to begin 24 hour visits from Saturday to Sunday, noon to noon. . . ." *Id.* Mr. Meacham recommended that this occur on alternating weekends.

On March 26, 2019, two days before Mother filed the petition for modification and relocation, Mr. Meacham stated that since his recommendation on January 23, 2019, "the children have had at least 24 hour visits every other weekend." Memo, 3/36/19, at 1. Mr. Meacham stated that the parties and the children agreed that Father's partial custody be increased to alternating weekends from Saturday at 12:00 p.m. to Sunday at 5:00 p.m. and additional time as agreed to by the parties. In addition, Mr. Meacham recommended that Father be granted custody one week in June, July and August. Rather than implement these recommendations, by order dated April 2, 2019, the trial court decided to address "this matter the same date and time as the hearing on the [r]elocation request of Mother." Order, 4/2/19.

Finally, Mr. Meacham issued a psychological evaluation on May 28, 2019, shortly before the subject proceedings. Mr. Meacham set forth the following factors, in part, which he concluded were significant for the court in considering Mother's relocation petition: (1) "Both children have indicated a preference to relocate to Missouri with both stating that they would look forward to seeing their father during extended breaks from school and during the summer. . . ."; and (2) "There is no doubt that moving the children over 1000 miles away would

significantly interfere with [F]ather's custodial time over the status quo, particularly given the financial situation of both [M]other and [F]ather that would make it difficult to finance frequent visitation between Pennsylvania and Missouri."[8]  Psychological Evaluation, 5/28/19, at 4-5.

Likewise, the GAL, on June 4, 2019, reported to the court that he met separately with P.M. and J.M., who expressed their preference to relocate with Mother and proposed being with Father for extended periods over the summer and during holiday breaks.  The GAL opined that the children are more bonded to Mother than to Father, and that breaking that bond would be detrimental to them.  The GAL also recommended that the court approve Mother's relocation request.

During the hearing on Mother's modification and relocation request, Mother and S.D.S. testified.  Father was not present for the hearing[9] but he was represented by counsel who conducted cross-examination of both witnesses. The trial court also took judicial notice of the reports of the GAL and Mr. Meacham, which were in the record.

_____

[8] Mother testified that she worked "in the . . . department" at Lock Haven University.  N.T., 6/7/19, at 21.  Mother testified that she did not yet seek employment in Missouri; however, when relocated, she testified, "I'll probably stay in . . . clerical work."  N.T., 6/7/19, at 31.  The record is devoid of any evidence regarding Father's employment.

[9] There is no indication in the record or in Father's brief why he was not present for the hearing.

On June 13, 2019, the trial court granted Mother's relocation request. In addition, the court granted the parties shared legal custody, Mother primary physical custody, and Father partial physical custody six consecutive weeks each summer, during the Christmas holiday from December 26th until two days before school resumes in even-numbered years, and one day after school ends until two days before school resumes in odd-numbered years. The court directed that Mother "shall be responsible for all expenses in transporting the children to and from Pennsylvania for Father to exercise partial custody. . . ." Order, 6/13/19, at Paragraph 5. The court also directed that when Mother is in Pennsylvania for more than 72 hours, "Father shall be given an opportunity to spend time with the children." *Id.* at Paragraph 8. Finally, the court directed that Father "shall be entitled to one video chat with the children at least one time per week." *Id.* at Paragraph 7.

Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[10] On July 19, 2019, the trial court filed an opinion pursuant to Rule 1925(a).

_____

[10] Father's notice of appeal includes docket numbers 1478-2017 and 894-2006. This Court issued a rule to show cause upon Father to explain why his appeal should not be quashed pursuant to Pa.R.A.P. 341(a) and its Note, which require the filing of separate notices of appeal when a single order resolves issues arising on more than one trial court docket. Further, our Supreme Court, in *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), held that a notice of appeal that fails to comply with Rule 341 and its Note shall result in quashing the appeal. This Court, in *In the Matter of M.P.*, 204 A.3d 976 (Pa. Super. 2019), held that *Walker* applies in civil and family cases.

On appeal, Father presents the following issues for our review:

1.    Did the trial court err as a matter of law in failing to address both the sixteen factors outlined in 23 Pa.C.S.A. § 5328(a) factors and the ten factors of 23 Pa.C.S.A. § 5337(h) when granting Mother's [p]etition for [m]odification/[r]elocation?

2.    If the court did not err as a matter of law, was there an abuse of discretion in finding the 23 Pa.C.S.A. § 5337 factors favored Mother, where the evidence presented failed to satisfy her burden of proof[?]

Father's brief at 4.[11]

_____

In his timely response, Father asserted that Rule 341 is inapplicable. Specifically, he asserted that docket number 894-2006 related to the Clinton County litigation that commenced in 2006.  On November 22, 2017, subsequent to the transfer of the case from Centre County, Clinton County Court of Common Pleas ordered that docket number 894-2006 merge with docket number 1478-2017.  Further, the order directed that all future custody filings be docketed at 1478-2017.  Therefore, Father asserted that at the time of this appeal, the only open docket was 1478-2017.

This Court discharged the Rule and permitted Father to file a supplemental brief on the issue.  Father asserts, "this is an issue of clerical error. . . ."  Father's supplemental brief at 5.  Father explains that the subject order is entered on docket number 1478-2017.  However, the order is also entered on docket number 894-2006 and this is due to clerical error.

Upon review, the November 22, 2017 order directed that future filings be docketed at 1478-2017, but the parties and the trial court continued to include both docket numbers in filings thereafter.  We find no reason to disagree with Father that this was inadvertent error.  Therefore, we deem the subject order as resolving issues arising only on docket number 1478-2017.  As a result, Rule 341(a) and its Note are inapplicable in this case and there is no reason to quash Father's appeal.

[11] "In reviewing a custody and relocation order, our scope is of the broadest type and our standard is an abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not

- 8 -

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006), citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321-5340. Specifically, when deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant Section 5328(a) factors. *E.D. v. M.P.*, 33 A.3d 73, 80 (Pa. Super. 2011). "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

Likewise, Section 5337(h) requires courts to consider all relocation factors when there is a relocation request. *E.D.*, 33 A.3d at 80. It is well-settled that when making a decision on relocation that also involves a custody decision, "the

_____

include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

trial court must consider all ten relocation factors and all sixteen custody factors"

outlined in the Act. *A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa. Super. 2013).

Section 5328(a) of the Act provides as follows.

**§ 5328.  Factors to consider when awarding custody.**

**(a)** *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Section 5337(h) of the Act provides as follows.

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

As the party proposing relocation, Mother has the burden of proving that relocation will serve the children's best interest as set forth under Section 5337(h). **See** 23 Pa.C.S. § 5337(i)(1). In addition, "[e]ach party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S. § 5337(i)(2).

In his first issue on appeal, Father asserts that the trial court erred as a matter of law by failing to consider *both* Sections 5328(a) and 5337(h) in granting Mother's relocation request.

In its Rule 1925(a) opinion, the trial court states that it only addressed the Section 5337(h) relocation factors, explaining, "Mother was previously awarded primary custody of the children[,] and[,] therefore, this court did not deem it necessary to address those factors." Trial Court Opinion, 7/19/19, at 2. The trial court distinguishes **A.M.S.**, **supra**, because both parties were seeking primary physical custody in that case, while in this case "no petition was pending concerning primary custody." **Id.** This is a distinction not recognized by statutory or case law.

Our case law is clear that when a trial court modifies an existing custody order when deciding a relocation request, the court must consider both the Section 5328(a) custody factors and the Section 5337(h) relocation factors. **See A.V. v. S.T.**, 87 A.3d 818, 824 (Pa. Super. 2014) ("Here, the court's opinion in support of its . . . order addressed only the relocation factors. By omitting application of the Section 5328(a) custody factors, although making a new award of custody, the trial court erred."); **see also A.M.S.**, 87 A.3d at 835 ("The trial

court must consider all ten relocation factors and all sixteen custody factors when making a decision on relocation that also involves a custody decision.").[12]

In this case, when the trial court decided to grant Mother's request to relocate with the children to Missouri, it had to issue a new custody order. Mother initially recognized this by requesting modification of the existing order, along with relocation. By the time she filed her petition, Father's partial custody had steadily increased after being temporarily suspended in November 2017. He was then exercising custody for "at least 24 hours" on alternating weekends. Memo, 3/26/19, at 1.

Further, by order dated April 2, 2019, the trial court stated it would address during the relocation hearing Mr. Meacham's March 26, 2019 recommendation for an additional increase in Father's partial custody. However, our review of the notes of testimony reveals that the court did not address those recommendations. In fact, the court failed to consider any of the Section

_____

[12] This Court has held that Section 5328(a) is not implicated in cases where an order does not change the "type" of the underlying custody award *or* the amount of custodial time awarded to a party. **See M.O. v. J.T.R.**, 85 A.3d 1058 (Pa. Super. 2014). Here, Mother filed a petition for modification and relocation, and the court issued a new custody order that changed Father's custodial time. Moreover, this Court has held that even in cases where the trial court merely reaffirms its prior custody order, it is nevertheless making a ruling on a request to change the form of physical custody. As such, the trial court is bound to decide whether the order remains in the child's best interest and it is obligated to consider the factors set forth in Section 5328(a). **See S.W.D. v. S.A.R.**, 96 A.3d 396, 406 (Pa. Super. 2014).

5328(a) custody factors in reaching its relocation and custody modification decision. As such, the court committed an error of law.[13]

Accordingly, we vacate the June 13, 2019 order and remand to the trial court to hold an additional hearing for the parties to develop evidence relevant to the Section 5328(a) custody factors and the Section 5337(h) relocation factors. The trial court shall then issue a new order ruling on the parties' custody and relocation requests.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2020

---

[13] Based on this disposition, we need not consider Father's second issue.